NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

06-3284

DAVID M. MULLINS,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

David M. Mullins, of Avon, Indiana, pro se.

John S. Groat, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Brian M. Simkin, Assistant Director.

Appealed from: United States Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

06-3284

DAVID M. MULLINS,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

_____

DECIDED:  May 4, 2007

_____

Before LOURIE, RADER, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.

The Merit System Protection Board (Board) affirmed the Department of Commerce's (Agency's) decision to remove petitioner David Mullins from his position of Facilities Engineering Technician at the National Ocean and Atmospheric Administration's Weather Forecast Office in Indianapolis, Indiana.  <u>Mullins v. Dep't of Commerce</u>, Docket No. CH-0752-05-0686-I-1 (M.S.B.P. Feb. 8, 2006) (<u>Initial Decision</u>); <u>Mullins v. Dep't of Commerce</u>, Docket No. CH-0752-05-0686-I-1 (M.S.B.P. June 14, 2006) (<u>Final Decision</u>).  Finding the decision supported by substantial evidence and in accordance with the law, this court <u>affirms</u>.

I

The Agency removed Mr. Mullins for misuse of a government vehicle, misuse of official time, misuse of a government travel card, and falsification of official travel documents. In a 23-page "Notice of Proposed Removal," Mr. Mullins' supervisor, Mr. Kirt Grahl, gave 78 occasions when the Agency suspected Mr. Mullins had misused a government vehicle. Mr. Mullins worked in Indianapolis, Indiana, but his government-issued credit card showed purchases of gasoline in locations like Smyrna, Tennessee, and Ohio. He had no authorization to travel to those places. The Notice of Proposed Removal also comprehensively described 16 alleged occasions of misuse of official time. Based on the government-issued credit card records, the Agency found Mr. Mullins repeatedly traveled in a single day tens to hundreds of miles from his assigned duty location. The Notice of Proposed Removal also detailed four unauthorized cash withdrawals on the government-issued travel credit card, and five falsifications of official travel documents. Mr. Mullins, in one transaction, withdrew $500, and on five occasions turned in forged hotel receipts. Mr. Mullins also obtained mileage reimbursement from the Agency claiming use of his personal vehicle when he was actually driving a government vehicle.

Mr. Mullins admitted misuse of the government vehicle and unauthorized cash withdrawals on the government-issued travel card. In his response, he also claimed that he didn't "quite understand th[e] charge" of falsification of official travel documents, but defended by stating that everyone in the Weather Service that has traveled "has included false information on their travel vouchers." Following review of the Notice of Proposed Removal and Mr. Mullins' response, the Deciding Official, Ms. Valeria Capell,

06-3284                                    2

found that Mr. Mullins violated many rules, regulations, and most importantly, the public's trust. Ms. Capell found that Mr. Mullins' misconduct cost the Agency $6,419.83. She also concluded that Mr. Mullins' position required trust. Accordingly, she authorized the removal.

Before the Board, Mr. Mullins did not deny that he purchased gasoline for the government vehicle in the multiple locations detailed by the Agency outside his duty area. He explained his detours as time when he was on duty without justifying the purpose of the trips. Furthermore, when confronted with the Agency's evidence of misuse of official time in the form of far-ranging travel outside of his duty location, Mr. Mullins could not adequately explain his use of time. For example, he claimed that he traveled to pick up a "contractor" in Ohio, who was a buddy named "Steve"; or to watch his son play football.

When confronted with evidence of falsification of travel documents, Mr. Mullins testified that he legitimately "made money on Government travel" by sleeping in his government vehicle and submitting fabricated hotel receipts. He admitted only a simple mistake.

The Administrative Judge (AJ) concluded that Ms. Capell properly considered all relevant factors, properly exercising her decision to remove Mr. Mullins. The administrative proceeding showed by preponderant evidence, that Mr. Mullins misused a government vehicle, sustaining 68 of the 78 specifications of government vehicle misuse. The Administrative Judge also sustained 10 of the 16 specifications of official time misuse, all of the misuse of government travel card specifications, and all of the falsification of official travel document specifications. The Board denied Mr. Mullins'

petition for review, adopting the AJ's Initial Decision as final.  <u>Final Decision</u>, slip op. at 1-2.

II

The standard of review for appeals from a final order of the Board states:

> the court shall . . . hold unlawful and set aside any agency action, findings and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c)(1)-(3) (2000).  On appeal, Mr. Mullins argues that the Board did not "see that an ex-parte communication" occurred when Ms. Capell discovered Mr. Mullins' two prior job losses.  He argues that his guaranteed right to fundamental fairness was seriously violated when Ms. Capell "'google searched' my name . . . and came across . . . my alleged prior removal from Federal Service by the Air Force."  He asserts that Ms. Capell "pergured[sic] herself" when she stated that she was not influenced by his two prior job losses.

No ex-parte communication occurred when the Deciding Official, Ms. Capell, discovered for herself that "in 1996, the Department of the Air Force removed the appellant from a civil service position and that in 1997, the Smithsonian Institution told [Mr. Mullins] to 'look for a new job.'"  Indeed, the only "communication" that occurred was when Mr. Mullins communicated with Ms. Capell to bring to her attention the negative information about himself "by suggesting he had been subject to Board proceedings before."  Ex-parte communications are procedural defects only when they cause prejudice that undermines due process guarantees.  Because Mr. Mullins' two prior job losses did not affect Ms. Capell's decision to remove Mr. Mullins, the record

shows no prejudice. Indeed, on April 22, 2005, before Ms. Capell discovered Mr. Mullins' two prior job losses, Mr. Grahl had already outlined 102 specifications to support the four charges of misuse and misconduct against Mr. Mullins.

Furthermore, as clearly stated in the Initial Decision, the AJ knew the "removal" from federal service actually involved a settlement agreement where the Air Force agreed to pay Mr. Mullins in exchange for withdrawing his removal appeal. The AJ even noted that the Air Force was reluctant to expunge Mr. Mullins' employment records. Thus, this record shows no violations of due process guarantees. As a result, this court finds the Board's decision to affirm Mr. Mullins' removal is supported by substantial evidence, and substantively and procedurally in accordance with the law.